IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MICHAEL ALLEN O'SHEA, #1722057, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:12cv265 |
| v. | § | |
| | § | |
| BENNY PARKEY, ET AL., | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

**I. BACKGROUND**

Plaintiff Michael Allen O'Shea, formerly incarcerated in the Denton County Jail, initially proceeding *pro se* (though now represented by retained counsel) and *in forma pauperis*, claims that he was injured while apparently an arrestee at the Denton County Jail by lack of medical treatment for pre-existing shotgun wounds to his left shoulder, arm and hand in July and August 2010. The complaint was referred to the undersigned pursuant to 28 U.S.C. § 636(b). Now before the Court is Defendants John Doe, Jail Administrator; Doug Sanders, Medical Supervisor; Shannon McKeown, Lieutenant, Jail Medical; John Kissinger, Lieutenant, Jail Medical; Shannon Spraberry, Sgt., Jail Medical; and Jane Doe, Medical Assistant (collectively, the "Defendants") combined Motion to Dismiss[1] pursuant to Fed. R. Civ. P. 12(b)(6) (docket entry #37). The following summary of events is taken from Plaintiff's original complaint.

Plaintiff asserts that he was arrested at John Petersmith Hospital in Fort Worth, Texas, on

---

[1] The document is entitled at the caption as "Defendant Benny Parkey's Motion to Dismiss and Brief in Support," which is the same title as the concurrent motion to dismiss filed by individual Defendant Parkey (docket entry #36). The Court takes this as an administrative error.

1

July 2, 2010, where he was being treated for 12 gauge shotgun wounds to his left shoulder, left hand and the left side of his chest. He does not relate the origin of the wounds or why he was arrested. He was subsequently booked into the Denton County Jail the same day, where he was placed in the jail's medical unit. He alleges he was "screened" by medical assistant Jane Doe and placed in a medical cell for treatment. Apparently, he remained in the medical unit for his entire stay at the Denton County Jail. He further alleges he was removed from his cell daily for treatment, including changing his bandages and cleaning the wounds on his left shoulder and chest. However, he alleges, the wounds to his left hand were not looked at or treated despite his request to do so.

Plaintiff alleges that on July 10, 2010, after repeated requests and complaints of "foul smelling infection in [his] lef[t] hand," Jane Doe partially removed the bandage from his hand until his fingers were exposed. He claims green and black infection covered his fingers. Jane Doe re-wrapped the same "dirty bandages" on his hand, told him that the medical unit did not have the right bandages and returned Plaintiff to his cell.

Plaintiff next alleges that the following Saturday, July 16, 2010,[2] his brother, Richard O'Shea, and sister-in-law, Debbie O'Shea, visited him, saw the extent of the infection in his left hand, and spoke with jail authorities about Plaintiff's alleged lack of treatment. The following Monday (which he states was July 18, 2010, again a day off the actual calendar date), he was transported to an outside physician, Dr. John Ribiero, for treatment. He alleges that Dr. Ribiero advised him he needed immediate hospitalization and surgery. The next morning, he was

---

[2] The Court notes that July 16, 2010, was a Friday; however, Plaintiff qualifies his allegation by stating these events occurred "approximately" that date. Complaint at 6.

transported to Wise Regional Hospital in Decatur, Texas, where he was hospitalized and surgery performed. He describes the surgery as an amputation of his left ring finger; his first and second fingers were cut lengthwise to "scrape out gangrene infection" and the same for infection in his hand generally. He was subsequently treated with antibiotics and pain medication. He contends he now suffers from nerve damage, pain and inability to close his left hand as a result of the infection and surgery.

On August 4, 2010, Plaintiff states, his attorney observed his wounds and learned of the "lack of medical proper medical care" at the Denton County Jail and obtained his release via a personal recognizance bond.

Plaintiff filed his original complaint on May 4, 2012, alleging First and Eighth Amendment violations against Defendants Parkey, Burton, John Doe, Kesseler, Sanders, Kissinger, McKeown, Sprabery and Jane Doe for acts of deliberate indifference to his medical needs and failure in responsibility or supervisory duties. He seeks declaratory relief and compensatory and punitive damages.

Defendants filed a series of motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on May 28 and 29, 2013 (docket entries 35, 36 and 37). Plaintiff filed a consolidated response thereto on July 3, 2013 (docket entry #39).

**II.   STANDARD**

In the Fifth Circuit, "(A) motion to dismiss under rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)). The court is required to construe the complaint liberally in favor of the plaintiff, and takes

3

all facts pleaded in the complaint as true. *See Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). However, in ruling on a Rule 12(b)(6) motion to dismiss, the district court cannot look beyond the pleadings, *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). Thus, the Court will not look beyond the pleadings here.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Rule 8 does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Thus, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (internal quotation omitted). A plaintiff meets this standard when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III.   ANALYSIS AND DISCUSSION

Defendants argue that the complaint contains no allegation of any personal participation by any of them in any violation of Plaintiff's rights, with the exception that the complaint includes specific allegations with regard to actions taken by Defendant Jane Doe, the medical assistant at the jail medical unit, which Defendants argue do not constitute deliberate indifference; that there is no supervisory liability in a § 1983 lawsuit; that they are entitled to qualified immunity; and that

Plaintiff's pleadings do not meet the standard for deliberate indifference to medical needs.

Plaintiff's sole factual allegation in his complaint regarding Defendant John Doe states:

> Defendant John Doe is the Jail Administrator and he is legally responsible for the welfare, healthcare, and safety of all the inmates of that jail.

Complaint at 3. The only other time this Defendant is mentioned is in Plaintiff's "Legal Claims," in which he states:

> 32. Defendant John Doe, Denton County Jail Administrator, failed his responsibility to properly train or supervise his subordinates which allowed the deliberate indifference to medical needs to take place and to continue causing the violations of Plaintiff's First and Eighth Amendment Rights under the U.S. Constitution causing emotional distress, pain, suffering, and physical injury.

*Id*. at 9. Plaintiff's sole factual allegation regarding Defendant Kesseler states:

> Dr. Randell Kesseler,[3] Defendant, is legally responsible for the treatment of all inmates in that jail, and the operations of the medical department.

*Id*. at 3. His sole factual allegation regarding Defendant Sanders states:

> Defendant Doug Sanders is the Medical Supervisor and is legally responsible for he care and treatment of inmates of the medical department, and training/supervision of medical staff.

*Id*. His sole factual allegation regarding Defendant McKeown states:

> Shannon McKeown, Medical Lt. is legally responsible for the supervision of medical staff, as well as the care and treatment of all inmates in the jail, under medical care.

*Id*. at 4. His sole factual allegation regarding Defendant Kissinger states:

> John Kissinger, Medical Lt. is legally responsible for the supervision of medical staff as well as the care and treatment of all inmates in that jail, under medical care.

---

[3] The Court notes that the United States Marshals Service returned the summons issued to Defendant Kesseler on July 24, 2013, noting that "Individual to serve is deceased." Docket entry #46.

*Id*. His sole factual allegation regarding Defendant Spraberry states:

> Shannon Sprabary [*sic*], Medical Sgt., is legally responsible for the proper care and treatment of all inmates in that jail under medical care.

*Id*. His sole factual allegation regarding Defendant Jane Doe states:

> Jane Doe, Medical Assistant, is legally responsible for the care and treatment of all inmates in that jail, under medical care.

*Id*. The only other time these Defendants are mentioned is in "Legal Claims":

> 34. The Defendants, Dr. Randell Kesseler, Doug Sanders, John Kissinger, Shannon McKeown, Shannon Sprabery, and John[4] Doe, each acted with deliberate indifference to Plaintiff's serious medical needs, failed in thier legal responsibility to provide the basic medical care needed and treatment necessary, and the neglect and failure to treat Plaintiff's hand cause the Plaintiff pain, suffering, physical injury, and emotional distress which violate his First and Eighth Amendment rights under the U.S. Constitution.

*Id*. at 10 (as in original). None of the remaining factual allegations assert any personal involvement or conduct by any of the Defendants, with the exception of Defendant Jane Doe, the medical assistant in the medical unit where Plaintiff was housed. No other Defendant is even mentioned with regard to Plaintiff's medical treatment or case management. Taking these allegations together, with the possible exception of Jane Doe, Plaintiff is suing these Defendants in their supervisory capacities according to their respective positions, that is, under a theory of *respondeat superior*.

However, the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990). Under 42 U.S.C. § 1983, a supervisory entity or officials are

---

[4] Plaintiff previously made a separate "Legal Claim" with regard to Defendant John Doe. Given the construction of Plaintiff's complaint, and the fact that there is no separate "Legal Claim" with regard to Defendant Jane Doe, it is likely that he intended to refer to Jane, not John, Doe here.

not liable for subordinates' actions on any vicarious liability theory. In fact, the Supreme Court recently held that the term "supervisory liability" in the context of a § 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *See Iqbal*, 556 U.S. at 677. There, the Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge or acquiesced in their subordinate's misconduct. *Id*. As a result of *Iqbal*, courts have questioned whether supervisory liability remains an option at all in § 1983 cases. *See Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010); *Parrish v. Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010); *see also Floyd v. City of Kenner, La.*, 351 Fed. Appx. 890, 897 (5th Cir. 2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," quoting *Iqbal*, 556 U.S. at 676).

Under Fifth Circuit jurisprudence, a supervisory entity may only be held liable if one of the following exists: (1) personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisory entity's wrongful conduct and the constitutional violations. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). These two conditions are consistent with the Supreme Court's holding that mere knowledge or acquiescence is insufficient to create supervisory liability in the § 1983 setting. *Iqbal*, 556 U.S. at 677. Here, Plaintiff has not alleged nor shown that any of the Defendants have met either of these criteria.

Plaintiff also alleges that Defendant John Doe failed to "properly train or supervise" his subordinates, and appears to allege that Defendant Sanders is responsible for the training of

7

medical staff. To the extent that the original complaint contemplates a claim for failure to properly train subordinates, there are no factual allegations establishing any supporting framework whatsoever for such a claim. Accordingly, these claims are wholly conclusory and inadequate to support the complaint. *Twombly*, 550 U.S. at 570.

Defendants also raise the defense of qualified immunity, but do not brief its application. It is unnecessary to reach this issue in any event.

Finally, Defendants contend that any allegation of deliberate indifference in the complaint fails to meet the applicable standard. On its face, that appears to be true with regard to most of the Defendants, but given the inapplicability of *respondeat superior* and the lack of pleading in the complaint, addressed above, it is also unnecessary to address this point further except in one regard.

With regard to Defendant Jane Doe, Plaintiff has made more specific allegations of deliberate indifference. However, to state a claim under the Eighth Amendment for denial of medical care, a Plaintiff must allege acts or omissions "sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Norton v. Dimanzana*, 122 F.3d 286, 291 (5th Cir. 1997). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *Norton*, 122 F.3d at 291. It occurs when two requirements are met. "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (internal citations and quotations omitted). Second, the prison official must subjectively know of and disregard a

substantial risk to the inmate's health or safety. *Id*. at 839-40. In this light, deliberate indifference is "an extremely high standard to meet," and requires a showing that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. TDCJ-ID*, 239 F.3d 752, 756 (5th Cir. 2001). Plaintiff's pleadings indicate that he was assessed upon booking for his medical conditions and was assigned housing in the Denton County Jail's medical unit to accommodate his treatment. He admits he was treated for his shoulder and chest wounds. He was seen daily for that purpose. Plaintiff further states in his pleading that Defendant Jane Doe regularly treated him and on at least one occasion unwrapped his hand bandages for inspection and re-wrapped them, stating that the medical unit did not have the appropriate bandages for wrapping his hand. Defendants argue that these pleading mean that Plaintiff was receiving medical care and that, at most, he simply disagreed with the diagnosis and/or treatment he received for his hand wound. Whether the latter assertion is true or not, the fact remains that Plaintiff's own pleadings show that he was receiving medical care, including specifically from Defendant Jane Doe. However, it is not necessary to determine whether Plaintiff's original complaint meets the "extremely high standard" to support a claim against Defendant Jane Doe for deliberate indifference to his medical needs. The Court will recommend that Plaintiff be given leave to amend his complaint in an effort to clarify his claims; that effort should include his allegations against Defendant Jane Doe.

For the reasons stated herein, Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted.

In his consolidated response to all of the Defendants' motions to dismiss, Plaintiff requests

leave to file an amended complaint[5] addressing the deficiencies in his original, *pro se* complaint and expanding on the factual allegations contained therein. Rule 15(a)(2) of the Federal Rules of Civil Procedure require leave of court for amendments more than 21 days after service of a responsive pleading. Further, a court "should freely give leave when justice so requires." *Id*. In this case, Plaintiff filed his original complaint as a *pro se* litigant, who is entitled to some liberal construction in his pleading. *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989). Since filing his complaint, and about the time Defendants filed their motions to dismiss, Plaintiff obtained counsel, who asserts on behalf of Plaintiff in the response that a clarified amended complaint will resolve the deficiencies addressed herein. Although the Defendants addressed here (and the other Defendants in their respective motions to dismiss) "vehemently" deny Plaintiff's factual allegations, there is no question that Plaintiff was injured at the time of his incarceration in the Denton County Jail, either developed an infection or an existing infection progressed, and required surgery including an amputation during that incarceration. Whether Defendants, or any of them, can be held responsible for those events will be seen through a well-pleaded amended complaint. Accordingly, the interests of justice require that Plaintiff be allowed to amend his complaint and he should be allowed to do so within fourteen days of the dismissal of the original complaint.[6]

---

[5] The response states initially that "Plaintiff has obtained counsel and files this response to the motions to dismiss and is also seeking to obtain leave to file an amended complaint to plead his claims more specifically." Complaint at 1. Later, Plaintiff asserts that he "has filed a motion for leave to amend his complaint to be more specific regarding the nature and basis of his claims." *Id*. at 4. No such motion appears on the docket of this case. However, the Court construes the response itself to request leave to file an amended complaint and notes that no Defendant has opposed Plaintiff's expressed request to do so.

[6] The Defendants addressed here do not include Dr. Randell Kesseler, who the U.S. Marshals Service indicated is deceased. Plaintiff should address this point appropriately in his amended complaint.

## IV. RECOMMENDATION

It is therefore recommended that Defendants John Doe, Doug Sanders, Shannon McKeown, John Kissinger, Shannon Spraberry, and Jane Doe's Motion to Dismiss (docket entry #37) be **GRANTED** to the extent that Plaintiff's original complaint be dismissed. It is further recommended that Plaintiff's constructive Motion for Leave to Amend contained in the consolidated response be **GRANTED** and Plaintiff be allowed to amend his complaint once within fourteen days of the date of adoption of this recommendation.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

**SIGNED this 4th day of February, 2014.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE